UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

**TAL KESHET,**

               Plaintiff,

         -against-

**VERIZON, INC, VERIZON COMMUNICATIONS, INC., & VERIZON INFORMATION SERVICES**

               Defendants.

-----------------------------------------------------------------X

**COMPLAINT**

06 cv 11373 (GEL)

**JURY TRIAL DEMANDED**

Plaintiff hereby alleges upon personal knowledge and information and belief as follows:

## NATURE OF THIS ACTION

1. This action is brought by Plaintiff to recover damages for Defendant's discriminatory and otherwise illegal conduct in, among other things, terminating Plaintiff's employment in retaliation for insisting that defendants investigate and address a claim of hostile work environment against on the grounds of his religion.

## THE PARTIES

2. Plaintiff is Jewish and a citizen of New York who was employed at Verizon Information Services for several years until October 17, 2005.

3. Defendant Verizon, Inc., and Verizon Communications, Inc., its subsidiary, are Delaware Corporations registered to do business in New York.

4. Upon information and belief, defendant Verizon Information Services is a non-incorporated division of Verizon Communications, Inc. whose headquarters are located in Dallas/Fort Worth Texas and whose principal business is generating and publishing Yellow Page Advertisements.

## JURISDICTION AND VENUE

5. Jurisdiction is proper in that there is complete diversity of citizenship and the amount in controversy exceeds $75,000.

6. Venue is properly placed in this district pursuant to 28 U.S.C. § 1391(c) in that each Defendant is deemed to reside in this judicial district.

FACTUAL ALLEGATIONS UNDERLYING PLAINTIFF'S CLAIMS

7. Plaintiff repeats and realleges the allegations set forth in all previous paragraphs as if fully set forth herein.

8. Starting January 5, 1998, Plaintiff was employed by defendants (who hereinafter will be referred to collectively) as a salesperson. He was promoted several times thereafter, and at the time of his termination nearly eight years later, he was district manager for New York City. During the nearly eight years of his employment, Mr. Kashent received four president's awards, and recognized as top account manger in the country in 2001 and 2002, among other accolades. His performance was always superlative.

9. Starting in 2004 and continuing until his termination, plaintiff began to suffer a severe hostile work environment in his employment on account of his Jewish religion. He was called a "JEWISH RAT!" in an anonymous note put in his mailbox, had feces smeared in his work space, and some lower level employees made anti-Semitic comments to him on a number of occasions such as the "whole world hates the Jews," "everyone wants the Jews dead" and wearing a yarmulke is weird. His direct report pressured him to work on Yom Kippur.

10. After the feces incident, an anonymous letter was sent to the entire division indicating that the writer was "impressed" that "what appeared to be SHIT was smeared on [plaintiff's] chair, desk and floor" and that such violations of the Company's Code of Business Conduct "will be tolerated to Tal ONLY!!!"

11. Plaintiff complained about each and every one of these acts of hostile work environment. Defendants paid lip service to his complaints but did nothing to nothing to address them effectively.

12. During this time at least one another Jewish employee was terminated by one Noor Hameed, who had made several discriminatory comments toward plaintiff and the Jewish religion. Mr. Golden would also complaint of the hostile work environment that plaintiff also suffered, as well as discriminatory termination by Noor Hameed.

2

13.     At one point a heated discussion about the Jews took place on the office floor between plaintiff and one Fadi Yanni. After the discussion, both Yanni and plaintiff made complaints against the other, though shortly thereafter Yanni would withdraw his complaint.

14.     Even after Yanni withdrew the complaint, however, plaintiff had several discussions with EEO compliance officers about the discussion between himself and Yanni that led to Yanni's complaint against plaintiff. Plaintiff answered all of the questions posed to him on several occasions, and on each occasion asked what was being done to address his repeated complaints. Indeed, the complaints he had made concerned the wiping of feces on his workplace and anonymous encouragements that other employees join in the harassment; Yanni's complaint had been withdrawn and was based on nothing. Verizon did nothing to address any of plaintiff's complaints, yet was now targeting plaintiff in response to a complaint that had been made and withdrawn and that had only arisen in yet again another workplace discussion complaining about the Jews.

15.     The third time that an EEO officer came to his office, plaintiff was asked the same questions again and made clear to the officer that he considered it harassment that he was being asked the same questions that he had already answered about a complaint against him that had been withdrawn. Now he was being targeted by defendants while his complaints went unanswered. The EEO officer continued asking questions that plaintiff, finally said, I have answered all of those questions, I can't add anything else and he made clear that he considered the investigation part of the hostile work environment he was subject to at the company.

16.     The EEO officer terminated the interview and within hours, despite plaintiff's superlative performance, he was terminated on trumped up, pretextual charges that he did not cooperate with an ethics investigation. In fact, not only had he done so, but no other Verizon employee had ever been disciplined so swiftly without resort to any progressive steps or warnings. In fact, defendants were tired of plaintiff's complaints about discrimination at Verizon, and rather than eliminate the discrimination, they chose to eliminate him. On top of that, they further retaliated by unsuccessfully trying to stop his unemployment benefits. He now sues for redress.

FIRST CAUSE OF ACTION
RETALIATION FOR MAKING COMPLAINTS OF DISCRIMINATION
NEW YORK CITY HUMAN RIGHTS LAW

31. Plaintiff repeats and realleges each allegation contained in the preceding paragraphs above.

32. Defendant's actions in terminating plaintiff for the complaints he made -- up to and including his complaint that their repeated investigations into a frivolous, withdrawn complaint against him -- violate the applicable provisions of Article 8 of the Administrative Code of the City of New York.

33. As a result of the foregoing, Plaintiff has been damaged.

SECOND CAUSE OF ACTION
HOSTILE WORK ENVIRONMENT
NEW YORK CITY HUMAN RIGHTS LAW

34. Plaintiff repeats and realleges each allegation contained in the preceding paragraphs above.

35. Defendant's actions violate the applicable provisions of Article 8 of the Administrative Code of the City of New York.

36. As a result of the foregoing, Plaintiff has been damaged.

THIRD CAUSE OF ACTION
DISCRIMINATION ON THE GROUNDS OF RELIGION
NEW YORK CITY HUMAN RIGHTS LAW

37. Plaintiff repeats and realleges each allegation contained in the preceding paragraphs above.

38. Defendant's actions violate the applicable provisions of Article 8 of the Administrative Code of the City of New York.

39. As a result of the foregoing, Plaintiff has been damaged.

**WHEREFORE,** Plaintiff demands as follows:

    A.    Compensatory damages in excess of $175,000 to date and to be determined at trial;

    B.    Punitive damages;

    C.    Cost of suit and attorney's fees;

5

        D.    Such other relief as the Court may deem just and proper.

Dated:    New York, New York
           October 26, 2006

                                                                                                _____
                                                                            GREGORY ANTOLLINO (GA 5950)
                                                                            Attorney for Plaintiff
                                                                            1123 Broadway, Suite 902
                                                                            New York, NY 10012
                                                                            (212) 334-7397